<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AIDA AYALA,<br>*o/b/o E.A., a minor* | |
| **Plaintiff,** | Civil Action No. 14-7359 (ES) |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Aida Ayala on behalf of a minor, E.A., seeking review of an Administrative Law Judge's decision denying E.A.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**I.     Background**

On September 28, 2010, Plaintiff filed for SSI on behalf of her minor son E.A., alleging disability due to epilepsy and attention deficit hyperactivity disorder ("ADHD"). (D.E. No. 5, Administrative Record ("Tr.") at 121-130, 140). Plaintiff's application was denied on July 17, 2011, and again on reconsideration on February 29, 2012. (*Id.* at 57-58). Plaintiff requested a hearing before an ALJ, which was held on March 6, 2014 before ALJ Dennis O'Leary. (*Id.* at 24-56). On March 14, 2013, the ALJ issued a decision finding that E.A. was not disabled.

On May 17, 2013, Plaintiff requested a review of the ALJ's decision. (*Id.* at 7). The Appeals Council of the Social Security Administration denied the appeal on September 29, 2014. (*Id.* at 1-5). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner"). *See* 20 C.F.R. § 404.981.

On November 24, 2014, Plaintiff appealed the Commissioner's decision by filing the Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The administrative record was filed on January 28, 2015, (D.E. No. 5), and the parties briefed the issues raised by Plaintiff's appeal, (D.E. No. 8, Brief in Support of Plaintiff Aida Ayala o/b/o E.A. ("Pl. Mov. Br."); D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II. Legal Standards

### A. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While the ALJ's failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. The Three-Step Process for Evaluating Whether a Child Is Disabled

Under the Social Security Act ("SSA"), the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A child, i.e., "[a]n individual under the age of 18," is "disabled" if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Regulations promulgated under the SSA set forth a three-step sequential process for determining whether a child is disabled. 20 C.F.R. § 416.924. The claimant bears the ultimate burden of establishing these three steps. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is engaging in substantial gainful activity, then the child is not disabled, and the ALJ's inquiry ends. *Id.* If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has a severe impairment or combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a). At step three, the ALJ determines whether the child has an impairment or

combination of impairments that meets, medically equals, or functionally equals a listed impairment ("listing") found in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 416.924(d).  If the child has an impairment that meets, medically equals, or functionally equals a listing, the child is deemed disabled under the SSA.  20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  To determine whether an impairment medically equals a listing, the ALJ considers all of the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence.  20 C.F.R. § 416.926(c).

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing."  *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005).  A child has an impairment or combination of impairments that "functionally equals" a listing if he or she has either two "marked" limitations or one "extreme" limitation in the following domains: "(i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, or (vi) health and physical well-being."  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  Such a limitation is "'more than moderate' but 'less than extreme.'"  *Id.*  A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function."  *Id.*  In determining whether an impairment or combination of impairments "functionally equals" a listing, the ALJ

4

considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(1)-(3).

### III. ALJ O'Leary's Decision

ALJ O'Leary applied the three-step sequential process and determined that E.A. had not been disabled from the date of E.A.'s application for SSI. (Tr. at 11-22). At step one, the ALJ determined that E.A. had not engaged in substantial gainful activity since the date of the application. (*Id.* at 14). At step two, the ALJ determined that E.A. suffered from two severe impairments: ADHD and epilepsy. (*Id.*).

At step three, the ALJ concluded that E.A. "does not have an impairment or combination of impairments that meets or medically equals the severity of the listings." (*Id.*). Specifically, the ALJ determined that neither E.A.'s ADHD nor his seizures met the medical criteria of any listing. (*Id.*). The ALJ then determined that E.A. "does not have an impairment or combination of impairments that functionally equals the severity of the listings." (*Id.*). In so finding, the ALJ noted that E.A. exhibited "less than marked limitation in acquiring and using information," (*id.* at 18); "less than marked limitation in attending and completing tasks," (*id.* at 19); "less than marked limitation in interacting and relating with others," (*id.* at 20); "no limitation in moving about and manipulating objects," (*id.*); "less than marked limitation in the ability to care for himself," (*id.* at 21); and "less than marked limitation in health and physical well-being," (*id.* at 22).

Based on the above analysis, the ALJ concluded that E.A. "has not been disabled, as defined in the Social Security Act, since September 28, 2010, the date the application was filed." (*Id.*).

## IV. Discussion

On appeal, Plaintiff argues that the ALJ's opinion is not supported by substantial evidence for two reasons. First, Plaintiff argues that the ALJ's decision is beyond judicial review due to several errors in the portion of administrative opinion concerning the medical equivalence analysis at step three. (Pl. Mov. Br. at 6-11). And second, Plaintiff argues that the ALJ failed to properly consider all relevant evidence with respect to the six functional domains that the ALJ must consider at step three. (*Id.* at 11-16). The Court will address both arguments in turn.

### A. Medical equivalence

Plaintiff argues that three errors in the medical equivalence portion of the administrative opinion render the ALJ's ultimate conclusion beyond judicial review. (*Id.* at 9-11). First, Plaintiff points to the fact that the ALJ incorrectly cited to listing 112.1 with respect to E.A.'s ADHD. (*Id.* at 9-10). Second, Plaintiff points to the fact that the ALJ incorrectly cited to listing 113.03 with respect to E.A.'s seizure disorder. (*Id.* at 10-11). And third, Plaintiff points to the ALJ's statement that there *is* medical evidence to support a finding that the relevant listing had been met, despite having concluded that "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity" of a listing. (*Id.*).

At step three, "the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). However, the ALJ need not "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Thus, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at his ultimate conclusion. *See id.*; *Holloman v. Comm'r*

*of Soc. Sec.*, No. 14-589, 2015 WL 1346167, at *2 (D.N.J. Mar. 25, 2015). Furthermore, where an ALJ explicitly states that he considered all of a claimant's impairments individually and in combination before determining that no listing was met, courts will affirm such determinations so long as there is no reason to doubt the veracity of the ALJ's statement. *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008).

And finally, where a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking an agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 398 (2009). This burden requires that Plaintiff also show that, but for the error, he might have proven his disability. *See Holloman*, 2015 WL 1346167, at *2.

Regarding the ALJ's erroneous citation to listing 112.1 in relation to E.A's ADHD, Plaintiff concedes that this is a typographical error, and "clearly means to convey the proper paragraph for ADHD, 112.11." (Pl. Mov. Br. at 9). The Court agrees. This conclusion is supported by the ALJ's subsequent reference to criteria actually contained in listing 112.11, including "medically documented evidence of marked inattention, marked impulsiveness and marked hyperactivity . . ." (Tr. at 14); *see also* 20 C.F.R. 404, Subpart P, Appendix 1.[1]

It is equally apparent that the ALJ's reference to listing 113.03—which covers malignant tumors in children—is a typographical error. There is no indication that listing 113.03 is in any way relevant to the impairments evidenced in E.A.'s medical record. Rather, if read in context, it appears that the ALJ intended to reference listing 111.03, which covers childhood nonconvulsive

---

[1] Plaintiff also takes issue with the fact that that the ALJ identifies paragraph B of listing 112.11 without informing the reader that the criteria necessary to meet paragraph B of listing 112.11 are in fact contained a separate listing covering organic mental disorders, listing 112.02. (Pl. Mov. Br. at 10). However, the ALJ was not required to explicitly discuss every relevant listing—including listing 112.02—in the administrative opinion. *See Jones*, 364 F.3d at 505. Thus, the ALJ's failure to explicitly mention 112.02 in the administrative opinion does not constitute grounds for remand. *Id.*

epilepsy. *See* 20 C.F.R. 404, Subpart P, Appendix 1. This conclusion is supported by the fact that, immediately following the reference to listing 113.03, the ALJ references criteria actually contained in listing 111.03, noting that those criteria had not been met. (Tr. at 14). The ALJ's subsequent discussion of medical and other evidence relating to E.A.'s seizure disorder further supports this conclusion. (*Id.* at 15).

Regarding the ALJ's statement that there *is* medical evidence to support a finding that E.A.'s ADHD meets the requirements of the relevant listing, it is equally apparent to the Court that this statement is a typographical error; rather, the ALJ intended to indicate that there is *insufficient* medical evidence to support a finding that E.A.'s ADHD meets the requirements of the relevant listing. This reading of the administrative opinion is supported by the fact that the section containing this statement is labelled "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," (*id.* at 14); and further, the statement is immediately preceded by the phrase "the requirements of this listing are not met," (*id.*).

The conclusion that this statement is a typographical error is further supported by the ALJ's review of the medical record later in the administrative opinion, where, for example, the ALJ noted that "in terms of the claimant's alleged attention deficit hyperactivity disorder, the evidence indicates that this condition is adequately controlled with medication." (*Id.* at 16). Based on the ALJ's discussion of these medical records, as well as the context in which the statement in question was contained, it is thus apparent that the ALJ intended to convey the conclusion that the record in fact *does not* support a finding that E.A.'s ADHD met the requirements of the listings. *See Jones*, 364 F.3d at 505.

Although the ALJ's opinion contains errors, the broader context of the erroneous statements combined with the ALJ's subsequent analysis of relevant medical evidence nevertheless provides the Court with a sufficient basis for judicial review of the administrative opinion. *See id*. Because of this, the typographical errors addressed above are harmless and do not warrant remand. *See Perkins*, 79 F. App'x at 515.

### B. Functional equivalence

Plaintiff next argues that the ALJ erred by failing to properly consider certain relevant evidence in discussing the six functional domains at step three. (Pl. Mov. Br. at 11-16). Plaintiff focuses on the domains of "attending and completing tasks" and "caring for yourself," arguing that the ALJ failed to properly consider certain evidence which allegedly contradicts his finding of "less than marked" limitation in both domains. (*Id.*).

Specifically, Plaintiff argues that the ALJ improperly disregarded portions of a medical report by consultative psychologist Dr. Kim Arrington in which the doctor identified multiple problem areas during E.A.'s mental examination. (Pl. Mov. Br. at 12-14). Similarly, Plaintiff argues that the ALJ improperly considered portions of outpatient records submitted by Dr. Kavitha Velicheti which supported the ALJ's step three conclusion, while ignoring inconsistent portions of the same reports. (*Id.* at 14). And finally, Plaintiff argues that the ALJ failed to properly consider a "teacher questionnaire" submitted by E.A.'s sixth grade teacher Carla Linfante in which the teacher noted problems with E.A.'s behavior in school. (*Id.* at 14-15).

In the domain of "attending and completing tasks," an ALJ will consider "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). A marked limitation in this domain may be found where

9

the claimant's impairments interfere seriously with his "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Thus, an individual with some impairments in this domain may nevertheless be found to have a less than marked limitation where those impairments do not create a serious interference with daily functioning. *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 147 (3d Cir. 2007).

In the domain of "caring for yourself," an ALJ will consider how well a child "maintain[s] a healthy emotional and physical state." 20 C.F.R. § 416.926a(k). Adolescents from the age of twelve to eighteen should be "increasingly independent in all day-to-day activities" and "should begin to discover appropriate ways to express . . . feelings." 20 C.F.R. § 416.926a(k)(2)(v). However, the regulations for this age range also contemplate that adolescents will "sometimes experience confusion in the way you feel about yourself," and "anxiety or worrying about yourself and your body." *Id.* Thus, adolescents may be found to have "less than marked" limitations in this domain even where the claimant's teacher reports "obvious problems" in areas such as "handling frustration appropriately," "being patient when necessary," and "responding to changes in own mood." *King v. Comm'r of Soc. Sec.*, No. 12-06573, 2013 WL 6188386, at *11-12 (D.N.J. Nov. 26, 2013).

Additionally, the regulations establish that, in order to get benefits, a child claimant "must follow treatment prescribed by [his] physician . . . if the treatment can reduce [his] functional limitations so that they are no longer marked and severe." 20 C.F.R. § 416.930(a). Where an impairment may be reasonably controlled with such medication, the impairment will not be found disabling within the meaning of the Social Security Act. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).

Here, the sections of the administrative opinion containing the ALJ's conclusions at each functional domain contain little analysis of the reports filed by Dr. Arrington, Dr. Velicheti, and Ms. Linfante. Nevertheless, each report is discussed in greater detail elsewhere in the administrative opinion. For example, the ALJ noted earlier in the step three portion of the opinion that Dr. Arrington "reported that the claimant had a dysthymic mood, a restricted affect, withdrawn behavior and that his judgment ranged from fair to poor due to impulsivity," but that "the rest of the examination was generally within normal limits. He was fully oriented; his attention, concentration, and memory were intact; and his motor behavior was normal." (Tr. at 17).

In that same section, the ALJ noted that in the teacher questionnaire, E.A.'s teacher found E.A. to exhibit "one serious limitation in attending and completing tasks," but also that E.A. "was a bright young boy who performed on grade level when he was on medication. When he did not take it, he was uncontrollable at times." (*Id.*). And, while the ALJ makes only a brief reference to Dr. Velicheti's report in the section of the administrative opinion covering the domains of "attending and completing tasks" and "caring for yourself," the ALJ similarly elaborates on his consideration of Dr. Velicheti's report earlier in the opinion. (*Id.* at 16). Thus, despite the brevity of the ALJ's discussion of relevant evidence in the sections containing the ALJ's functional equivalence findings, the opinion as a whole indicates that the relevant portions of the reports cited in Plaintiff's brief were properly considered. *Jones*, 364 F.3d at 505.

Additionally, the fact that these reports presented evidence of E.A.'s impairments does not necessarily mean that the impairments functionally equaled a listing. For example, while E.A.'s teacher found E.A. to suffer from a "serious problem" in "attending and completing tasks," the teacher also noted that E.A.'s behavioral problems presented themselves primarily when he was not on medication. (Tr. at 163). Further, the ALJ noted that Dr. Velicheti found that E.A.'s

"seizures and ADHD were controlled with medication." (*Id.* at 16).[2] Because the behavioral problems discussed in these reports could thus be controlled by medication, the ALJ appropriately concluded that the presence of those problems did not require a finding that the relevant domain's criteria had been met. *See Salles*, 229 F. App'x at 148 (finding that the plaintiff's depression was not disabling at step three where the impairment was controlled by medication).

And despite the fact that E.A.'s teacher found him to exhibit "obvious problems"[3] in the domain of "caring for yourself," the ALJ appropriately concluded that those limitations fell within the acceptable range of functioning in that domain. *King*, 2013 WL 6188386, at *11-12 (affirming ALJ's conclusion that "obvious problems" referenced in a teacher questionnaire did not indicate that the problems rose to the level of a "marked limitation" in the domain of caring for yourself). Thus, despite the evidence of E.A.'s impairments present in the record, the ALJ adequately supported his conclusion that these impairments did not functionally equal any of the relevant listings. *Id.*

## V.     Conclusion

For the foregoing reasons, the Court AFFIRMS ALJ O'Leary's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[2] While the ALJ characterized E.A.'s ADHD as "controlled," Dr. Velicheti in fact found that E.A.'s ADHD had merely improved "with occasional behavioral outbreaks." (Tr. at 325). Nevertheless, the ALJ's consideration of this report is consistent with his conclusion that E.A.'s ADHD did not meet the criteria of the relevant functional domains. *See King*, 2013 WL 6188386, at *7 (affirming ALJ's conclusion that an impairment was non-disabling where the impairment had improved, but was not controlled, with prescribed medication).

[3] The teacher questionnaire rates "obvious problems" as less serious than "severe problems," but more serious than "slight problems." (Tr. at 166).